UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                                    Case No. 8:14-CR-298-T-17TGW

RENEE KIMBERLY GREGG
_____/

ORDER

This matter comes before the Court pursuant to the Government's Request for Leave to Dismiss Indictment and Superseding Indictment, filed February 19, 2015, (Doc. 90), the Defendant's Motion to Dismiss the Indictment and Count Two of the Superseding Indictment with Prejudice, filed February 23, 2015, (Doc. 94), and the Government's Response, filed February 23, 2015. (Doc. 95). For the reasons that follow, the Indictment and Count 2 of the Superseding Indictment are dismissed without prejudice.

The Middle District of Florida spans over 350 miles from the southeast Georgia border to the southwest coast of Florida. Three of Florida's six largest metropolitan statistical areas—Tampa, Jacksonville, and Orlando—are located in the District; over 11 million people—57% of Florida's population—reside in the District; and 35 of Florida's 67 counties fall within the jurisdiction of the District. United States District Court, Middle District of Florida, About Us, https://www.flmd.uscourts.gov/About/AboutUs.htm. Only six states, excluding Florida, are more populous than the District, which is considered one of the busiest districts in these United States of America. Id.

Headquartered in Tampa, the United States Attorney's Office for the Middle District of Florida is entrusted with the awesome and paramount power to prosecute federal criminal charges in the District. Distinguished professionals have served in the capacity

as United States Attorney for the Middle District of Florida, including a current United States Circuit Judge. Prosecutors wield extraordinary authority to prosecute an individual for a crime. Prosecutors must exercise and exhibit the highest assiduity, acumen, and awareness when evaluating evidence collected during an investigation, presenting that evidence to a grand jury, and ultimately filing an indictment—an action that unquestionably permanently adversely affects an individual's constitutional rights, reputation, and standing in his or her community, regardless of guilt. In fiscal year 2014, the United States Attorney's Office for the Middle District of Florida filed 1,245 criminal cases in the District. Id. During this Court's 32 year tenure as a federal judge, I presided over thousands of criminal cases throughout the District, and the procedural history and prosecutorial indiscretions in the present case strike an exceptional chord in the history for this United States Attorney's Office for the Middle District of Florida.

On June 16, 2014, the Government filed a criminal complaint alleging Defendant transported child pornography in violation of Title 18, United States Code, Section 2252(a)(1), (Doc. 1), an allegation to which Defendant allegedly previously admitted, and defense counsel adamantly disputes any confession. (Doc. 12). Defendant was arrested June 17, 2014, and detained without bond; Defendant reserved the opportunity to address pretrial release at a later date after conducting due diligence. (Docs. 4, 7). Defendant's arrest was reported days later in numerous print and electronic formats, including the nationally-circulated Tampa Tribune. The Government filed an indictment July 16, 2014, charging Defendant with one count of sexual exploitation of children in violation of Title 18, United States Code, Section 2251(a) and (e), and one count of knowingly transporting child pornography through interstate commerce in violation of Title 18, United States

2

Code, Section 2252(a)(1) and (b)(1). (Doc. 8). Defendant allegedly sent a picture of herself performing oral sex on an infant child to an individual in New York. From reviewing the pleadings in this case, the face of the individual performing the act apparently is not completely pictured in the photographs.

On July 28, 2014, Defendant moved for pretrial release, (Doc. 10), a request the Government vehemently opposed July 29, 2014. (Doc. 12). The Government claimed Defendant was a flight risk and danger to the community because Defendant "fac[ed] a long sentence of imprisonment." (Doc. 12). On July 31, 2014, the Magistrate Judge held an initial hearing on the matter. At that hearing the Assistant United States Attorney responsible for prosecuting the case explicitly referred to the Defendant in open court as a "sexual predator,"[1] "child abuser," and a "quintessential danger to the community," phrases the Assistant United States Attorney would repeat at subsequent hearings. Defense counsel not only contested Defendant's confession, but also represented to the Court that the mother of the alleged victim reviewed the photograph and did not believe the Defendant was depicted due to a drastically different appearance between Defendant and the perpetrator—namely, the depicted individual's hair length.

After conducting a scrupulous hearing, the Magistrate Judge granted Defendant's request for pre-trial release and imposed stringent conditions, including: 1) confining Defendant to a residence under electronic monitoring; 2) requiring Defendant to report to United States Pre-Trial Services Agency ("Pre-Trial Services") weekly; 3) forbidding Defendant from consuming illegal substances and requiring Defendant to submit to any method of testing Pre-Trial Services deemed appropriate; 4) forbidding Defendant from

---

[1] The Government has not submitted, and the Court is not aware of, any previous criminal conduct or convictions that would classify Defendant as a sexual predator either in the Florida or Federal courts.

3

any unsupervised contact with person under 18 years of age (with the exception of Defendant's daughter); 5) forbidding Defendant from owning or possessing computers; 6) forbidding Defendant from accessing the Internet; 7) requiring Defendant to provide DNA specimens to the Government; 8) forbidding Defendant from contacting certain people associated with the case; and 9) a $325,000.00 surety bond secured through residences and accounts that would result in financial devastation to Defendant's mother and fiancé should Defendant fail to comply with any of the conditions. (Doc. 16).

The Assistant United States Attorney immediately orally moved for and filed a Motion to Stay to appeal the pre-trial release decision to this Court. (Doc. 17). The Magistrate Judge granted the stay for three days until August 8, 2014, at noon. (Doc. 18). On August 8, 2014, this Court held a hearing on the Government's Motion for Revocation, (Doc. 22), granted in part the relief sought, and required the parties to submit a modified Order of Release to include prohibition on the Defendant's use and possession of cellular telephones, a Fourth Amendment waiver, and other conditions. (Doc. 24). These conditions were imposed based on the evidence the Assistant United States Attorney presented to the Court at both hearings.

On August 12, 2014, the Defendant, her parents, and her fiancé executed a surety note, in which all individuals acknowledged the conditions of pre-trial release and the dire consequences should Defendant fail to comply with any single condition or minutiae contained therein. (Doc. 35). The Defendant's parents and fiancé risked their livelihoods—their homes, savings, and retirement accounts—after being repeatedly warned that the Government commanded the power to seize and even sell those assets should Defendant break any of the enumerated conditions, especially the condition that

forbid Defendant from leaving the residence, which included the grave scenario of transporting her child to the hospital in urgent need of emergency medical attention.

On September 24, 2014, this Court held a status conference to determine the length of trial and address any potential issues. Counsel agreed the trial would last one week, and addressed no further significant matters. (Doc. 37).

On November 21, 2014, this Court held a subsequent, similar status conference. At the conference, counsel reaffirmed the week-long trial estimate, the Court set the matter for a date certain trial on February 2, 2015, and granted the Assistant United States Attorney certain trial protection. (Doc. 42). The Court further informed the attorneys this trial would receive priority and that the February trial schedule was compiled in its entirety based on the representations and estimates made at prior status conferences.

Sometime before, but no later than December 3, 2014, the Government possessed evidence that effectively established Defendant's alibi; this evidence suggested that on the date and time the Defendant allegedly took the photograph, Defendant was in fact at work, and the minor child was at daycare.[2] (Doc. 94). There was also a dispute whether the photograph was sent through email or text message. Id. On January 7, 2015, defense counsel requested the bench notes for the New York Police Department Sergeants responsible for examining the computers, and the Government stated no such notes were taken.[3] Id. On January 9, 2015, defense counsel requested the subpoena results from the co-conspirator's email accounts, to which the Government replied:

> We've reached out to HIS New York to see if such results any [sic] exist. In any event, I'm not sure they would even be relevant, but we'll get the first question answered first.[4]

---

[2] The Government's Response, (Doc. 95), does not dispute this contention.
[3] The Government's Response, (Doc. 95), does not dispute this contention.
[4] Id.

5

On January 13, 2015, Defendant filed a Motion for Bill of Particulars. (Doc. 51). Counsel for Defendant[5] represented to the Court that the Government disclosed "voluminous [additional] discovery" January 12, 2015. (Doc. 51). This discovery disclosure included in excess of 10,000 pages and stated additional, outstanding discovery would be disclosed when received. (Doc. 51). The disclosure also informed Defendant that a superseding indictment would likely be filed before trial. (Doc. 51). This discovery disclosure may have violated[6] the July 31, 2014 Pre-Trial Discovery Order that required disclosure of all Rule 16 discovery by August 11, 2014. (Doc. 14). Based on the potentially dilatory discovery disclosures, counsel for Defendant sought to ascertain: 1) the date the photograph was taken; 2) the jurisdiction in which the photograph was taken; and 3) the date the photograph was transported. (Doc. 51).

The next day, January 14, 2015, the Government filed the superseding indictment subject to the pending motions, and the Defendant's Motion for Bill of Particulars was accordingly denied as moot. (Doc. 54). The primary revisions between the indictment and superseding indictment include the following: 1) expansion of the date range for the alleged production of the photographs; 2) specification of the alleged illegal conduct; 3) modification of the charged criminal statutes that added an allegation of aiding and abetting; and 4) expansion of the vehicle of interstate commerce through which the picture was mailed, shipped, and transported. Compare Doc. 8 with Doc. 52. Defense counsel contends the Government did not provide any additional discovery prior to the superseding indictment to justify the substantive changes. (Doc. 94).

---

[5] The Court notes the appearance of a second defense attorney on January 6, 2015, (Doc. 47), and strongly suspects the late, voluminous discovery necessitated additional counsel.
[6] The lapse in time between the close of discovery and the potentially tardy disclosure is an estimated 154 days, or just over five months.

On January 16, 2015, the Court conducted a brief status conference, at which time counsel for Defendant informed the Court a Second Motion for Bill of Particulars would be forthcoming to address the superseding indictment, and the Assistant United States Attorney stated a prompt response would follow the filing of the second motion.

On January 20, 2015, Defendant filed the Second Motion for Bill of Particulars, and similarly sought to ascertain: 1) the date the photograph was taken; 2) the jurisdiction in which the photograph was taken; 3) the adult female in the photograph; 4) the date the photograph was transported; and 5) the person who allegedly committed the offense and/or aided and abetted Defendant in the offense. (Doc. 55). In opposition to the motion, the Assistant United States Attorney explained that "[m]ore than sufficient information about the image…[was] provided…in discovery…[and] additional information is not warranted." (Doc. 57). The Assistant United States Attorney continued, and represented "[t]he adult female in the photo is the defendant" and "[t]he photo was taken in the Middle District of Florida." The Assistant United States Attorney based this information on the Defendant's purported confession—evidence undoubtedly presented to the grand jury to obtain both the indictment and superseding indictment—and moved the Court to deny the motion based on, <u>inter alia</u>, Defense counsel's implicit request to obtain a preview of the Government's strategy or case. (Doc. 57).

On January 22, 2015, the Government disclosed a New York City Police Department report from 2013 that stated the photograph was sent by email (and not text message)—a contention the Government later stated was in error. (Doc. 94 at 4). Subpoena results for the email of the recipient of the photograph later revealed the photograph <u>was</u> sent via email on a date and time when Defendant was at work and the

minor child was at daycare, directly contradicting the metadata contained in the photograph. Id. Discovery subsequently disclosed by the Homeland Security Investigator professedly clarified that the email reference in the 2013 NYPD report was in error, despite the contradictory subpoena results previously discussed. Id. The next day the Government finally conceded the image in question was sent via email on August 17, 2011, at 2:45pm. The Government was in possession of this information no later than February 6, 2015, id., and, therefore, aware of serious conflicts in the evidence and credibility of the assigned law enforcement officers. The Government has not disclosed nor disputed these concerning conflicts in the Response in Opposition. (Doc. 95).

On January 27, 2015, the Court held its customary final status conference with all attorneys of record—the Assistant United States Attorney, co-counsel, and both attorneys for Defendant were present. (Doc. 65). Based on the superseding indictment and eleventh-hour discovery disclosures, counsel for Defendant invoked and the Court granted protection from a February trial. (Doc. 65). The Court rebuked the Assistant United States Attorney for the timing of the superseding indictment, the blatantly problematic discovery disclosures, and the lack of candor to the Court for not addressing these obvious and anticipated problems at the six prior appearances, and warned the Assistant United States Attorney that this conduct was neither appropriate nor professional, and that any further delinquency would result in severe consequences.

On February 18, 2015, after receiving the attorneys' schedules and reviewing upcoming trial calendars, the Court set this matter for a date certain trial on March 10, 2015. (Doc. 89). The next day, February 19, 2015, the Assistant United States Attorney filed the subject Motion to Dismiss, requesting leave to dismiss the indictment and

superseding indictment <u>without prejudice</u>. (Doc. 90) (emphasis added). The Court held a previously-scheduled status conference the following day, February 20, 2015.

At the February 20, 2015, status conference, without explanation, the assigned prosecuting Assistant United States Attorney did not appear; rather, the co-head of the criminal section of the United States Attorney's Office appeared to argue the motion. The Government admitted that, after "diligent" review of "every available piece of information" the Government had "no case" on any count of the indictment or superseding indictment against the Defendant as of February 20, 2015—18 days after the original February 2, 2015, trial date. The Government conceded it was "highly likely" that Defendant was not depicted in the photograph—an allegation the assigned Assistant United States Attorney previously asserted with unwavering conviction. The Government implored the Court, however, to dismiss Count II without prejudice; the Government requested this relief due to the wide date range from July 29, 2009 through February 15, 2013, and, accordingly, the Government's inability to pursue further charges related to transmission of child pornography should the Court dismiss Count II with prejudice. Counsel for Defendant strenuously objected, noting the deficiencies in the Government's case and the now conceded consensual, legal, adult nature of the transmissions.

The Government is entitled to a presumption of good faith when moving for dismissal under Federal Rule of Criminal Procedure 48(a). <u>United States v. Dyal</u>, 868 F.2d 424, 428 (11th Cir. 1989). Rule 48(a) dismissals are typically without prejudice. <u>See United States v. Matta</u>, 937 F.2d 567, 568 (11th Cir. 1991). The dismissal is granted without prejudice if the reason or reasons for dismissal do not go to the merits or demonstrate a purpose to harass. <u>Id.</u> (citing <u>Dyal</u>, 868 F.2d at 426).

While the unique, perplexing history and procedural posture of this case seriously concern this Court and leave it with great unease, the co-head of the United States Attorney's Office criminal division represented to this Court that Defendant is still under investigations related to Count II—a serious offense that carries a lengthy period of incarceration. While candor to this Court obviously was lacking prior to February 20, 2015, the Government has presented reasons for dismissal without prejudice at this stage that, based on the representations, should not result in prejudice to Defendant, and do not demonstrate a purpose to harass Defendant. This Court strongly encourages the Government to exercise the utmost assiduity, acumen, and awareness that previously it severely lacked leading up to February 20, 2015. Accordingly, it is

**ORDERED** that the Indictment in its entirety and Count II of the Superseding Indictment are dismissed without prejudice. Count I of the Superseding Indictment was previously dismissed <u>with prejudice</u>. Accordingly, no counts remain in either the Indictment or Superseding Indictment, and the Clerk of Court is ordered to close this case pursuant to general procedures.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>25th</u> day of February, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel and Parties of Record;
United States Marshal's Service;
United States Pretrial Services Office
United States Attorney A. Lee Bentley, III
Federal Public Defender Donna L. Elm